UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THO VAN HUYNH, | CASE NO. C25-2093-KKE |
| Petitioner(s), | ORDER ON HABEAS PETITION |
| v. | |
| PAMELA BONDI, et al., | |
| Respondent(s). | |

Petitioner Tho Van Huynh is a citizen and national of Vietnam detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Huynh was detained on September 11, 2025 after reporting to the ICE office in Yakima, Washington pursuant to the terms of an order of supervision. Huynh now seeks relief from this Court to obtain his release from immigration detention, an order preventing removal to a third country without notice and due process in his reopened removal proceedings, and an order barring removal to an unknown third country. Dkt. No. 1. For the reasons stated below, the Court will grant Huynh's habeas petition.

I. BACKGROUND

A. **Vietnamese Refugee Removal**

Vietnam has long refused to repatriate Vietnamese nationals who came to the United States as refugees prior to 1995 ("pre-1995" immigrants). Dkt. No. 1 at 5; *Nguyen v. Scott*, 2:25-CV-01398, --- F. Supp. 3d ---, 2025 WL 2419288, at *6 (W.D. Wash. Aug. 21, 2025). Tin Thanh

ORDER ON HABEAS PETITION - 1

Nguyen, an immigration attorney who specializes in cases involving Vietnamese citizens and nationals, attests that "[b]ecause of Vietnam's refusal to issue travel documents, many Vietnamese nationals who came to the United States as refugees before 1995 and were ordered removed years ago, have continued to live and work in the United States and have regularly checked in with ICE in accordance with their [Order of Supervision] conditions." Dkt. No. 9-3 ¶ 7.[1] In 2020, the United States and Vietnam signed a Memorandum of Understanding ("MOU"), which established criteria for the repatriation of pre-1995 immigrants subject to an order of removal. Dkt. No. 9 at 5 (citing *Nguyen*, 2025 WL 2419288, at *14). However, the criteria are not fully available to the public, and Respondents have not supplied the Court with that information in this case. *Id.*; *see also Nguyen*, 2025 WL 2419288, at *14.

Despite the MOU, evidence submitted by Petitioner suggests that the repatriation of pre-1995 immigrants remains uncertain. In a declaration originally filed in another recent case, and offered by Petitioner here, Assistant Federal Public Defender Katie Hurrelbrink asserted that of at least sixteen pre-1995 Vietnamese clients who have been detained by ICE, "[n]one have yet been removed to Vietnam." Dkt. No. 9-2 ¶ 4 (originally filed in *Nguyen v. Bondi*, CV25-1833-JNW). She explained that "[m]any of these clients have been in detention for months without receiving a travel document," including one who has been detained for six-and-a-half months. *Id.* ¶ 5. In Hurrelbrink's experience, "ICE often detains pre-1995 Vietnamese immigrants for months without taking the steps necessary for removal." *Id.* ¶ 6. On top of delays in processing by ICE, Hurrelbrink has "never seen Vietnam respond to a travel document request within 30 days." *Id.* ¶ 7. To Hurrelbrink's knowledge, only one of her office's pre-1995 Vietnamese clients has received

---

[1] Nguyen's declaration was originally filed in *Nguyen v. Scott*, No. 2:25-cv-01398-TMC-SKV and is offered by Petitioner here.

ORDER ON HABEAS PETITION - 2

travel documents to date—in that case, ICE submitted his travel document request in August, and he did not receive notice of Vietnam's issuance of the document until October 23, 2025. *Id.* ¶ 8.

B.   **Petitioner Huynh's Re-Detention**

Petitioner Huynh is a Vietnamese citizen and national. In 1978, he fled Vietnam and came to the United States, and in 1981, became a legal permanent resident. Dkt. No. 9 at 1; Dkt. No. 8-4 at 4. On November 20, 1987, Huynh was convicted of armed robbery and murder. Dkt. No. 7 at 4. While serving his criminal sentence, Huynh received notice of deportation proceedings. Dkt. No. 8-1 at 2. On January 11, 1996, an Immigration Judge ordered Huynh removed to Vietnam. Dkt. No. 8 ¶ 6, Dkt. No. 8-2 at 2.

On January 27, 2016, Huynh was released from criminal custody and taken into ICE custody. Dkt. No. 8 ¶ 7. When ICE did not effectuate Huynh's removal as prescribed by the Immigration and Nationality Act ("INA"), it issued an Order of Supervision ("OSUP"). Dkt. No. 8-3. On April 28, 2016, Huynh was released from ICE custody pursuant to the OSUP. Dkt. No. 8 ¶ 8, Dkt. No. 8-3 (ICE "concluded that [Petitioner] may be released from ICE custody pending [his] removal from the United States."). Since his release, Huynh has not been convicted of any other crimes. *See* Dkt. No. 8-4 at 3–5. Between 2016 and 2025, Huynh regularly reported to the ICE office in Yakima, Washington under the OSUP. *See* Dkt. No. 8-3 at 2–3. On December 12, 2024, Huynh missed his check-in. *Id.* at 3. When he arrived for his next check-in on September 11, 2025, Huynh was taken into ICE custody. Dkt. No. 8-4 at 3.

ICE provided Huynh with a letter stating that his supervision had been revoked. ICE cited Huynh's failure "to continue reporting with ICE as required by [his] Order of Supervision appointments (sic) on December 12, 2024" and "to comply with completing required travel document applications to obtain a travel document to Vietnam." Dkt. No. 8-5 at 5. Colin Vincent, an ICE officer who completed Huynh's paperwork and conducted his interview, included only the

ORDER ON HABEAS PETITION - 3

following note in Huynh's notice: "Interview conducted 9/11/25. Tho stated he is willing to cooperate with any travel document requirements." Dkt. No. 8-5 at 6. Vincent's notes included nothing about Huynh's missed appointment on December 12, 2024. *See id.* Vincent filed a conflicting statement as part of Huynh's Form I-213, stating that "Huynh refused to assist ICE with any travel documentation information." Dkt. No. 8-4 at 4. Huynh's alleged refusal formed part of the basis for the revocation of supervised release, and his re-detention.

Huynh was subsequently "transported to NWIPC pending removal." Dkt. No. 8-4 at 4. To date, Huynh has been detained for over six months.[2] On October 24, 2025, Huynh filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his immigration detention as violating the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), and the Due Process Clause. Huynh asserts three grounds for relief: (1) that his re-detention violates the Due Process Clause because there is no significant likelihood he will be removed in the reasonably foreseeable future; (2) that Respondents' third country removal policy violates the Due Process Clause, the Convention Against Torture ("CAT"), federal regulations, and the APA; and (3) that Respondents' third country removal policy is punitive and violates both the Fifth and Eighth Amendments.

As of November 4, 2025, ICE was completing "the remainder" of the travel document request ("TDR"), which it asserts will be provided to the government of Vietnam. Dkt. No. 8 ¶¶ 14, 16. Brett Booth, a deportation officer for ICE, explained that certain components of the TDR must be translated to Vietnamese, and that in Huynh's case, "ICE received the translation of the documents necessary for [Huynh's] TDR." *Id.* ¶ 15. Once a TDR is completed, ICE sends it to the Enforcement and Removal Operations ("ERO") Headquarters Removal and International

---

[2] Courts in this district aggregate non-consecutive detention periods. *See, e.g.*, *Nguyen v. Scott*, No. 2:25-CV-01398, 2025 WL 2419288, at *13 (W.D. Wash. Aug. 21, 2025) (aggregating year-long detention in 2000 and 5-month detention in 2003); *Tang v. Bondi*, No. 2:25-CV-01473-RAJ-TLF, 2025 WL 2637750, at *4 (W.D. Wash. Sept. 11, 2025) (same as to a 92-day detention in 2011 and 113-day detention in 2025).

ORDER ON HABEAS PETITION - 4

Operations ("RIO") to review. After completing its review, ICE ERO Headquarters RIO must send the documents to the ERO Attaché in Vietnam for further processing. The ERO Attaché in Vietnam must then forward the TDR to the Vietnamese government, which will complete its own review, and upon approval, issue travel documents. In Booth's experience, "Vietnam is currently issuing travel documents within 30 days or less after the [TDR] is provided to the government of Vietnam by the ERO Attaché in Vietnam." *Id.* ¶ 14. Booth declared that ICE was "not currently attempting to remove [Huynh] to any country other than Vietnam." *Id.* ¶ 17.

On December 3, 2025, Respondents filed a status report with the Court in which they acknowledged "that there was an error in Petitioner's travel document," which required ICE to re-submit it for translation. Dkt. No. 11 at 1–2. Also on December 3, 2025, Respondents reported that "the travel document request packet was forwarded to ICE ERO headquarters for review and elevation to the ERO attache in Vietnam." *Id.* at 2. Respondents again insisted that once the document is sent to Vietnam, Vietnam will issue Petitioner's travel documents within 30 days. *Id.* Respondents provided no timeline for the ICE ERO Headquarters' and ERO Attaché's prerequisite reviews of Huynh's documents, nor any information about the likelihood that the government of Vietnam will ultimately approve the issuance of travel documents for Petitioner.

## II. DISCUSSION

A. **Legal Standard**

1. <u>Habeas petition</u>

To succeed on a habeas petition, a petitioner must show he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court's habeas jurisdiction includes challenges to

immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

2. <u>Detention of noncitizens who are ordered removed</u>

Detention of noncitizens following an order of removal is governed by the INA. "When [a noncitizen] has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the [noncitizen's] removal during a subsequent 90-day statutory 'removal period,' during which time the [noncitizen] normally is held in custody." *Zadvydas*, 533 U.S. at 682. During the 90-day removal period, the Government "shall detain" the noncitizen. 8 U.S.C. § 1231(a)(2)(A). Once the 90-day removal period ends, the Government may continue to detain certain noncitizens. *Id.* § 1231(a)(6). "[A noncitizen] ordered removed who is inadmissible …, removable[,] … or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period[.]" *Id.*

Federal regulations govern the re-detention and revocation of supervised release of a noncitizen. 8 C.F.R. § 241.13(a). Under 8 C.F.R. § 241.13(i), ICE may revoke a noncitizen's release if (1) if they violate the conditions of their release or (2) if, "on account of changed circumstances," ICE determines there is a significant likelihood the noncitizen will be removed in the reasonably foreseeable future.

However, the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Zadvydas*, 533 U.S. at 699. "A statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] … [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. Thus, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The

ORDER ON HABEAS PETITION - 6

"presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

In challenging detention through a habeas petition, the petitioner bears the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Once that showing is made, the Government "must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to meet its burden, then the noncitizen must be released from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

**B.     Huynh's Re-Detention is Unlawful**

Huynh is a noncitizen and Vietnamese national who has lived in the United States for 47 years. He is entitled to the protections of the Due Process Clause. *Zadvydas*, 533 U.S. at 693. Having been detained for over six months, Huynh's detention is not "presumptively reasonable." *Id.* at 701. Through his petition and reply, Huynh has provided evidence showing that Vietnam repatriates few pre-1995 immigrants (Dkt. No. 9-2 at 3–4, Dkt. No. 9-3 at 3–6), that Vietnam generally does not issue travel documents to pre-1995 immigrants within 30 days and is unlikely to do so in the future (Dkt. No. 9-2 at 3–4, Dkt. No. 9-3 at 4), that the United States government has failed to effectuate his removal for nearly 30 years (Dkt. No. 1 at 2, Dkt. No. 9 at 2), and that since his re-detention in September, ICE has not yet submitted his travel document request to the Vietnamese government for review (Dkt. No. 11 at 1–2). He has also shown that, as part of its travel document review, the Vietnamese government conducts interviews and site-visits with an individual's relatives in Vietnam to verify their identity, and considers "whether the individual has any family remaining in Vietnam, whether their Vietnamese identity can be verified, their criminal records, and the manner in which they left Vietnam and came to the United States, among many other factors." Dkt. No. 9 at 4–5 (citing *Nguyen*, 2025 WL 2419288, at *15); Dkt. No. 9-3 at 5.

Huynh's lack of a passport, Vietnamese birth certificate, family in Vietnam, or any Vietnamese identification documents could further delay issuance of a travel document. *See* Dkt. No. 9-3 at 5.

Accordingly, Huynh "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and the burden shifts to the government to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

Respondents generally maintain that "Petitioner's removal will likely occur in the reasonably foreseeable future" due to recent "increased cooperation with the government of Vietnam[.]" Dkt. No. 7 at 8. In their recent update, Respondents assert that after finding and correcting of an error in Huynh's TDR, on December 3, 2025, the packet was forwarded to ICE ERO headquarters for review. Dkt. No. 11 at 2. Both the declaration Respondents submitted with their response and their recent update suggest additional steps are still required before documents are transmitted to the Vietnamese government. *See* Dkt. Nos. 8, 11. Namely, the TDR must be reviewed both by ERO Headquarters RIO and the ERO Attaché in Vietnam, then forwarded to the Vietnamese government. Dkt. No. 8 ¶¶ 14–17. Respondents provide no guidance as to how long each ERO review may take, but note that once the Vietnamese government receives the documents, it generally issues travel documents "within 30 days or less[.]" *Id.* ¶ 14; Dkt. No. 11 at 1–2. Notably, Respondents do not specify whether the 30-day timeline pertains to pre-1995 Vietnamese immigrants, despite Huynh providing evidence of "various challenges inherent in getting Vietnam to issue travel documents for pre-1995 arrivals to the United States." Dkt. No. 9-3 ¶¶ 10–12 (Nguyen declaration providing that "of almost a hundred pre-1995 individuals for whom ICE has requested travel documents from Vietnam[,]" Vietnam has not issued a travel document to any within 30 days). Moreover, Respondents altogether ignore Huynh's representations that the process for issuing travel documents to pre-1995 immigrants "is highly dependent on the individualized facts of each case, including whether the individual has any family remaining in

ORDER ON HABEAS PETITION - 8

Vietnam, whether their Vietnamese identity can be verified, their criminal records, and the manner in which they left Vietnam … among many other factors." Dkt. No. 9-3 ¶ 8.

Respondents' strongest piece of evidence to suggest removal is foreseeable is that Vietnam has issued travel documents to 154 pre-1995 immigrants this year. Dkt. No. 7 at 8 (citing *Nguyen*, 2025 WL 2419288, at *17). Huynh does not dispute that the number of travel documents issued to pre-1995 immigrants has increased. *See* Dkt. No. 9-3 ¶ 8. However, in *Nguyen*, Judge Cartwright observed that 154 documents were issued in 225 cases, and the timeline between a travel document request and its issuance was not specified. *See* 2025 WL 2419288, at *17 ("[Declarant] does not clarify whether travel documents *issued* in FY2025 were also *requested* in FY2025, or if they include requests made in previous fiscal years."). Moreover, as in *Nguyen*, here, Respondents' data "fail[s] to rebut the evidence presented by petitioner that his individual circumstances make removal unlikely." *Id.* (citing *Nguyen v. Hyde*, No. 25-CV-11470-MJJ, 2025 WL 1725791, *4 (D. Mass. June 20, 2025) (requiring an individualized analysis)). Here, Respondents do not provide the Court with the eligibility criteria Vietnam uses in determining whether to issue a travel document to a pre-1995 immigrant. They also fail to analyze or otherwise state any factual basis to support their belief that Vietnam will issue a travel document to Huynh within 30 days of receipt of the TDR. Respondents do not address, for example, whether Huynh's lack of any family in Vietnam, the year that he left Vietnam, or his criminal conviction in the United States will affect the issuance of travel documents to him. *See* Dkt. No. 9-3 ¶ 8 (non-exhaustive list of factors Vietnam considers in issuing travel documents).

Despite Respondents' contentions, Huynh has now been detained for over six months, ICE has not yet completed its review of Huynh's TDR, and Vietnam has not yet issued the travel documents necessary to effectuate his removal. "ICE is not permitted to hold [Huynh] indefinitely

while it waits for travel documents from Vietnam." *Tran v. Bondi*, C25-01897-JLR, 2025 WL 3140462, at *3 (W.D. Wash. Nov. 10, 2025).

C.   **Huynh's Claims Related to Third Country Removal are Not Ripe**

Huynh's second and third claims for relief challenge the legality of his possible removal to a third country under the Fifth Amendment, the Eighth Amendment, the Convention Against Torture, the Administrative Procedure Act, and the relevant implementing regulations. *See* Dkt. No. 1 at 14–15. Because Huynh's claims are not ripe, the Court declines to address his arguments about possible removal to a third country.

Though a habeas petition brought pursuant to 28 U.S.C. § 2241 is the proper mechanism to challenge the legality of detention pending removal, *see Zadvydas*, 533 U.S. at 688, it cannot be used to seek relief for claims that are speculative or otherwise not ripe for review. *Thomas v. Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580 (1985). For a case to be ripe, the issues presented must be "definite and concrete, not hypothetical or abstract." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (citing *Railway Mail Ass'n v. Corsi,* 326 U.S. 88, 93 (1945)). The ripeness doctrine "prevent[s] courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Id.* at 1138 (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148 (1967)). This is because the court's "role is neither to issue advisory opinions nor declare rights in hypothetical cases, but to adjudicate live cases or controversies[.]" *Id.* "[D]istrict courts properly decline to issue advisory opinions or to declare rights in hypothetical cases rather than live cases or controversies." *Tran*, 2025 WL 3140462, at *4 (citing *Anchorage Equal Rights Comm'n*, 220 F.3d at 1138).

In his petition, Huynh makes general assertions that Respondents have designed and implemented a punitive practice of removing individuals to third countries without following procedures required by law and cites two instances in which pre-1995 Vietnamese immigrants

were removed to third countries. Dkt. No. 1 at 9–10. However, Huynh has not provided the Court with any evidence that Respondents seek to remove him to any country other than Vietnam. *See generally* Dkt. No. 1. To the contrary, Respondents have attested that they have no intent to remove Huynh to any country other than Vietnam, and have begun the process of securing travel documents for his removal to Vietnam. Dkt. No. 8 ¶¶ 16, 17. At this juncture, Huynh's claims are too speculative to form a live controversy as to the third country removal issue. *See Union Carbide*, 473 U.S. at 580; *Tran*, 2025 WL 3140462, at *4 (finding claims of third country removal not ripe where petitioner provided "no evidence that Respondents seek to remove him to a third country").

In sum, the third country removal claims raised by Huynh are not ripe for decision, so the Court declines to address them.

### III.  CONCLUSION

The Court GRANTS Huynh's petition for writ of habeas corpus (Dkt. No. 1). Respondents are ORDERED to immediately release Huynh from custody under the conditions of his most recent order of supervision.

Dated this 10th day of December, 2025.

Kymberly K. Evanson
United States District Judge

ORDER ON HABEAS PETITION - 11